UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA- EASTERN DIVISION

| | |
|---|---|
| DAVID C. GARNER, | ) EDCV 08-0335 (SH) |
| Plaintiff, | ) MEMORANDUM DECISION |
| v. | ) |
| MICHAEL J. ASTRUE, COMMISSIONER, Social Security Admin. | ) |
| Defendant. | ) |

## I. PROCEEDINGS

Plaintiff David Garner filed an application for Social Security Disability Insurance Benefits ("DIB"), pursuant to Title II of the Social Security Act, on September 27, 2004, alleging disability onset date of February 1, 2002. AR 62. The claim was denied initially and upon reconsideration on April 8, 2005. AR 11. Plaintiff filed a timely written request for a hearing on June 8, 2005. An Administrative Law Judge ("ALJ") conducted a hearing on April 24, 2007, at

1  which Plaintiff appeared and testified. Also appearing and testifying were Samuel
2  Landau, M.D., a medical expert, and Sandra Fioretti, a vocational expert. AR 11.
3  The ALJ issued an unfavorable decision on May 9, 2007. AR 17. The Appeals
4  Council denied review on January 24, 2008. AR 3. Plaintiff alleges disability due
5  to depression, anxiety, post traumatic stress disorder, and pain in his back and
6  shoulder. AR 73, 247-52.
7       Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction
8  of the undersigned Magistrate Judge. Plaintiff and Defendant filed a Joint
9  Stipulation ("JS") on December 8, 2008. Plaintiff asserts three claims of error.
10 First, Plaintiff contends that the ALJ erred by failing to properly consider and
11 address the totality of relevant medical evidence of record which is supportive of
12 his claim. Second, Plaintiff contends that the ALJ improperly evaluated his
13 testimony of mental impairment. Third, Plaintiff contends that the ALJ improperly
14 evaluated the Questionnaire testimony of Plaintiff's wife. For the reasons shown
15 below, the Commissioner's decision denying benefits is affirmed.

## II.  STANDARD OF REVIEW

18      Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the ALJ's
19 decision to deny benefits. The Commissioner's decision that a claimant is not
20 disabled may be set aside when the ALJ's findings are based on legal error or are
21 not supported by substantial evidence in the record as a whole. <u>Schneider v.
22 Commissioner of the SSA</u>, 223 F.3d 968, 973 (9th Cir. 2000).
23      "Substantial evidence is more than a mere scintilla but less than a
24 preponderance - it is such relevant evidence that a reasonable mind might accept as
25 adequate to support the conclusion." <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir.
26 1995). "[The Court reviews] the administrative record in its entirety to decide
27 whether substantial evidence to support the ALJ's decision exists, weighing
28 evidence that supports and evidence that detracts from the ALJ's determination."

Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). The Court may not affirm the ALJ's decision "simply by isolating a specific quantum of supporting evidence." Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).

### III. DISCUSSION

**a. The ALJ properly considered the totality of relevant medical evidence.**

First, Plaintiff contends that the ALJ did not properly consider the totality of relevant medical evidence in the record which is supportive of his claim. JS 2. Specifically, Plaintiff points to symptoms reported during a behavioral health intake evaluation at the Veteran's Administration Hospital in Loma Linda, CA, on June 15, 2004. JS 2. During this intake, Plaintiff reported that he experienced symptoms as a part of his psychological history, including reoccurring nightmares, loss of sleep, and anti-social behavior. JS 2-6. Plaintiff argues that the ALJ should have discussed the impact of these symptoms and limitations on his ability to sustain full time competitive employment. JS 7.

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Smolen v. Chater, 80 F.3d 1273, 1287 (9th Cir. 1996), Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). However, in fulfilling this duty, it is not necessary for the ALJ to discuss all the evidence of record. See Vincent v. Heckler, 739 F.2d 1393, 1394 (9th Cir. 1984).

In that an absence of detailed discussion on any particular matter within an ALJ's Decision does not necessarily indicate an improper consideration of the record, it is a reminder that the burden to prove a disability, including the impact of symptoms resulting in functional limitations, belongs to Plaintiff. See Mayes v. Massanari, 276 F.3d 453, 458 (9th Cir. 2001)("It was Mayes' duty to prove that she

1 was disabled"); 42 USCS § 423 (d)(5) (Supp. 2001). Here, the symptoms Plaintiff
2 refers to are subjective symptoms that he reported to a doctor during an intake
3 evaluation. Plaintiff alone may describe his symptoms with firsthand knowledge,
4 but in the context of Social Security DIB, his statements are nevertheless subject to
5 determinations of credibility, and are regarded differently than objective evidence
6 that is assessed and submitted by a medical professional. Of note, the ALJ did
7 discuss the intake evaluation in his Decision. He stated:

> "On June 15, 2004, at Loma Linda Veterans Administration Hospital, the claimant complained of depression and anxiety. (Exhibit 1F. p.9). He stated that he can concentrate without too much trouble but complained of recent memory loss (Exhibit 1F. p.10). On mental status examination, the claimant was well-groomed and somewhat anxious, speech was normal, mood varied between anxious and depressed, affect was slightly constricted, though processes were linear, cognition was unimpaired, and judgment and insight were good. (Exhibit 1F. p.11)." AR 15.

13 As the primary fact-finder, the ALJ discussed the relevant portions from the
14 intake evaluation, including both subjective findings as reported by Plaintiff, and
15 objective findings as reported by the physician in the mental status examination.
16 The ALJ was not required to include in his Decision every statement reported by
17 Plaintiff to his doctor, and the omission of such did not constitute error.

18 Second, Plaintiff contends that the ALJ has mischaracterized the findings
19 and limitations reported by a psychological consultative examiner. JS 7. Plaintiff
20 alleges that the ALJ's summary somehow insinuated malingering or exaggeration
21 on Plaintiff's part. JS 7.

22 On October 6, 2006, Dr. Adam Cash, a psychologist, performed a
23 psychological evaluation of Plaintiff at the request of the Department of Social
24 Services. AR 170-75. Dr. Cash administered a number of tests as a part of this
25 evaluation, including a mental status examination, the Bender Gestalt II, the Rey
26 15 II, the Trail Making Test Parts A and B, the Test of Memory Malingering
27 (TOMM), the Wechsler Memory Scale – 3rd Edition (WMS-III), a learning and
28 memory test, and the Minnesota Multiphasic Personality Inventory – 2nd Edition

- 4 -

(MMPI-2). AR 171-72. The results are included in Dr. Cash's summary report. AR 172-74. The ALJ summarized the relevant portions of Dr. Cash's findings in his Decision.[1] AR 16.

Regarding the MMPI-2, the results table contained four categories: the validity scales, the raw score, the T-Score, and the Interpretation. AR 173. Each scale measured yielded a raw score and a T-Score, as well as an Interpretation. Under the column "Interpretation," the values were "all true response set possible," "moderate/marginal," "acceptable," "moderate/marginal," "marginal," and "marginal." AR 173. Below the table, Dr. Cash further reported that, "According to the validity scales of the MMPI-2, Mr. Garner's performance indicated he may have slightly exaggerated the overall level of pathology and deficit he is experiencing." AR 173.

Plaintiff specifically takes issue with the ALJ's statement that, "There was some suggestion of marginal validity on the MMPI-2 with possible slight over-endorsement of psychopathology." JS 7, AR 16. However, in comparing the statements of the ALJ and Dr. Cash, it appears that the ALJ accurately summarized the consultative examiner's report. The Court finds that the ALJ's summary did not unduly portray Plaintiff to be a malingerer, nor mischaracterize the consultative examiner's findings.

Third, Plaintiff contends the ALJ's findings regarding Plaintiff's mental limitations were inconsistent with the consultative examiner's opinion, and not supported by substantial evidence in the record. The ALJ found that, "Mentally, [Plaintiff] cannot do work that is highly stressful, requires hypervigilance, or

---

[1] The ALJ summarized the consultative examination as follows: "At the psychological evaluation on October 6, 2006 (Exhibit 8F), the claimant had signs and symptoms consistent with an anxiety disorder and mood disorder. The examiner concluded that the claimant was not in acute distress and was not experiencing significant cognitive difficulty as was reflected in the mental status examination and his performance on formal testing. He demonstrated no impairment in his ability to understand, remember, and carry out simple instructions. He would be mildly impaired in concentration, persistence, and pace as the claimant had some problems with attention and concentration and his general work pace was somewhat slow and slightly labored. His ability to function socially was moderately impaired. His tolerance for stress was moderately impaired and the claimant was at mild risk for emotional deterioration in the workplace. There was some suggestion of marginal validity on the MMPI-2 with possible slight over-endorsement of psychopathology." AR 16.

1 requires intense interpersonal contact with co-workers, supervisors, or the public."
2 AR 13. As main points of inconsistency between the ALJ's statement above and
3 the consultative examiner's opinion[2], Plaintiff sets forth three conclusions from the
4 consultative evaluation report for which the ALJ failed to account: (1) that Plaintiff
5 was at mild risk for emotional deterioration in the workplace; (2) that Plaintiff's
6 tolerance for stress was moderately impaired; and (3) that Plaintiff's ability to
7 function socially in the workplace was moderately impaired. JS 8.

8 "The [ALJ's] findings of fact are conclusive if supported by substantial
9 evidence." Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). "Where evidence
10 is susceptible to more than one rational interpretation, the ALJ's decision should be
11 upheld." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotations
12 omitted).

13 Here, a reading of the ALJ's assessment of Plaintiff's mental limitation and
14 the consultative examiner's opinion on its face does not show any clear
15 inconsistencies leading to material error. The Court finds that the ALJ's findings
16 regarding Plaintiff's mental limitations were consistent with the consultative
17 examiner's opinion and supported by substantial evidence in the record. Therefore,
18 the ALJ has not erred.

19 **b. The ALJ properly evaluated Plaintiff's testimony of mental**
20 **impairment.**

21 Plaintiff contends that the ALJ improperly evaluated his testimony of mental
22 impairment. "The ALJ is responsible for determining credibility, resolving
23 conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala,

---

[2] Under "Current Level of Functioning and Prognostic Impressions" the consultative examiner stated the following: "According to the psychological evaluation and testing, Mr. Garner does have signs and symptoms consistent with an anxiety disorder and mood disorder. He is not in acute distress and is not experiencing significant cognitive difficulty at this time as is reflected in the mental status examination and his performance on formal testing. He demonstrates no impairment in his ability to understand, remember, and carry out simple instructions. He is mildly impaired in his levels of concentration, persistence, and his ability to work at a reasonable pace as he had some problems with attention and concentration and his general work pace was somewhat slow and slightly labored. His ability to function socially in the workplace is moderately impaired. His tolerance for stress is moderately impaired at this time and he is at mild risk for emotional deterioration in the workplace." AR 174.

1  53 F.3d 1035, 1039 (9th Cir. 1995). "The [ALJ's] findings of fact are conclusive if
2  supported by substantial evidence." Miller v. Heckler, 770 F.2d 845, 847 (9th Cir.
3  1985). Also, as stated above, "[w]here evidence is susceptible to more than one
4  rational interpretation, the ALJ's decision should be upheld." Orn v. Astrue, 495
5  F.3d 625, 630 (9th Cir. 2007) (internal quotations omitted).

6  In this Circuit, the ALJ's assessment of credibility consists of two stages of
7  analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's
8  testimony regarding the severity of symptoms. Smolen v. Chater, 80 F.3d 1273,
9  1281 (9th Cir. 1995). The threshold test developed in Cotton v. Bowen, 799 F.2d
10 1403, 1407 (9th Cir. 1986), requires the claimant to (1) produce objective medical
11 evidence of an impairment or impairments; and (2) show that the impairment or
12 combination of impairments could reasonably be expected to (not that it did in
13 fact) produce some degree of symptoms. The *Cotton* standard was reaffirmed in
14 Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). Further, Bunnell
15 held that an adjudicator who finds a claimant's allegation of severity of symptom
16 to be not credible must specifically make findings which support this conclusion.

17 If a claimant is able to meet the *Cotton* standard, and there is no evidence of
18 malingering, the ALJ may reject the claimant's testimony for concerns based on
19 credibility only by offering specific, clear and convincing reasons for doing so. See
20 Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d
21 915, 918 (9th Cir. 1993).

22 Applying the *Cotton* test, Plaintiff asserted that he is disabled due to an
23 anxiety disorder, post-traumatic stress disorder, a musculoskeletal disorder
24 involving the back and right shoulder, and sensory neuron hearing loss. AR 13.
25 The ALJ found that Plaintiff's impairments are "severe." AR 13. Also, Plaintiff's
26 combination of impairments could reasonably be expected to cause some degree of
27 symptoms. The ALJ found that Plaintiff's impairment more than minimally
28 restricts his ability to engage in substantial gainful activity. AR 13.

In determining whether Plaintiff's testimony regarding the severity of his symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) Plaintiff's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). Also to be considered in evaluating the credibility of the symptom testimony are the factors set out in SSR 96-7p.[3]

Here, the ALJ considered that Plaintiff was not receiving disability benefits from the VA. AR 15. Plaintiff was noted to be receiving psychiatric treatment through the VA; however, Plaintiff was not taking medication, despite recommendations from the VA to do so. AR 15, 111. According to VA records, Plaintiff did not feel that his problems were serious enough to warrant taking medication. AR 111. Although records indicated Plaintiff's dependence on his wife, no records indicated a necessity for such dependence. AR 15. Plaintiff testified that he can function without the presence of his wife. AR 15, 255-56. Plaintiff's activities of daily living include household chores, shopping, and driving. Plaintiff is able to take care of his personal hygiene. Plaintiff watches television and works on the computer. AR 15.

There was substantial evidence in the record to support finding Plaintiff not entirely credible, and the ALJ's reasons for rejecting Plaintiff's testimony were clear and convincing. Therefore, the ALJ has not erred.

---

[3] The factors set out in SSR 96-7p include: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

### c. The ALJ properly evaluated the Questionnaire submitted by Plaintiff's wife.

Plaintiff contends that the ALJ improperly evaluated the Questionnaire of Plaintiff's spouse. Plaintiff's spouse submitted a Third Party Questionnaire, dated October 25, 2004, which included her assessment of Plaintiff's daily activities, abilities, and her general remarks about Plaintiff's condition. AR 80-88. The ALJ rejected this written statement by the spouse, because these were "subjective observations that are not supported by medically acceptable clinical and laboratory diagnostic techniques." AR 15. The ALJ further stated that Plaintiff's spouse lacked the medical expertise necessary to assess his condition. AR 15. However, the ALJ concluded that Plaintiff's spouse was a biased source because she had a potential financial interest in Plaintiff's receipt of disability benefits. AR 15.

In order to reject lay witness testimony, the ALJ must provide reasons germane to each witness whose evidence he rejects. Smolen v. Chater, 80 F.3d 915, 918 (9th Cir. 1993). Here, Plaintiff testified that his spouse financially supported him. AR 246. Also, Plaintiff testified that his spouse convinced him to apply for DIB. AR 250. These were reasons specifically germane to Plaintiff's spouse and her potential financial interest in his DIB award, which the ALJ was permitted to consider. It was within the ALJ's purview to view the spouse's bias as a factor undermining her credibility.

Further, an ALJ may discount lay witness evidence that conflicts with medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). Here, the spouse's statement asserted that Plaintiff was in constant physical pain, and that the severity of the pain level directly impacted his mental condition. AR 86-7. However, the medical evidence in the record refutes a finding of such a constant level of physical pain as alleged by Plaintiff's spouse, as did Plaintiff's own

testimony[4] at the ALJ hearing. The medical records are substantial evidence that Plaintiff is not significantly impaired by physical pain.

Regarding Plaintiff's complaint of back pain in the right knee, the ALJ's Decision noted that on physical examinations, "there was no tenderness in the back and mild tenderness in the right knee." AR 16, 120. Plaintiff was recommended nothing stronger than ibuprofen. AR 120.

Also as noted by the ALJ, on December 3, 2004, Plaintiff underwent a complete orthopedic evaluation at the request of the Department of Social Services. AR 16, 144-48. The chief complaints were low back pain and right shoulder pain. AR 144. Dr. Bunsri T. Sophon, the consulting orthopedist, found that Plaintiff had a normal posture and that his gait was normal. AR 145. There was no tenderness in the lumbar spine, and flexion and bending were slightly limited. AR 16, 146. Physical examination of the shoulder was normal. AR 16, 146. Dr. Sophon found no evidence of significant physical impairment, and no functional limitations. AR 148.

The record also contains evaluation results based on consultative examinations performed by the state agency's physicians. In a report dated December 24, 2004, Dr. Stephen C. Swan found no significant physical impairment. AR 167. This conclusion was reaffirmed by Dr. George G. Spellman on April 7, 2005. AR 169.

A radiology report dated November 24, 2004 indicated that images of the right shoulder were taken on November 15, 2004. These "demonstrated moderate degenerative hypertrophic changes at the AC joint without evidence of fracture or sublaxation." AR 201. This is the only record which showed an objective

---

[4] On April 24, 2007, when asked by his attorney, "Do you think the psychiatric is the worst problem now or the back?" Plaintiff replied, "Today, my back is not that bad. However, two days ago it hurt so much that I had trouble getting out of bed. It comes and goes. The psychiatric is constant, so that's probably the biggest problem that I'm having is just the psychiatric." Subsequently, no medical evidence was submitted to further clarify the impact of the back pain on Plaintiff's ability to engage in work, beyond the RFC limitations described by the ALJ.

- 10 -

measurement of potential physical impairment. The record contains no other imaging data or measurement taken of physical areas regarding which Plaintiff alleged pain.

Based on the record, the ALJ's assessment of the spouse's Questionnaire in comparison to the objective medical evidence was within his authority.

## **IV. ORDER**

For the foregoing reasons, the Decision of the Commissioner is affirmed and Plaintiff's Complaint is dismissed.

DATED: August 24, 2009

_____/s/_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE